
FILED
2013 Feb-28  PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BLOUNT COUNTY BOARD OF EDUCATION,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Lead Civil Action Number** |
| **vs.** | ) | **2:11-cv-3539-AKK** |
| | ) | |
| **MELINDA BOWENS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| **J.B., by and through his mother, Melinda B,** | ) | **Member Civil Action Number** |
| | ) | **2:11-cv-3555-AKK** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JAMES E. CARR,** | ) | |
| **Superintendent of and for Blount** | ) | |
| **County Board of Education,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

The dispute before this court centers on the obligations a school system has

to provide a free and appropriate public education ("FAPE") to a disabled child

under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400,

*et seq.*  After an administrative hearing officer found that Blount County Board of Education failed to offer J.B., Melinda Bowens' three year old autistic son, a FAPE and ordered Blount County to reimburse Bowens for J.B.'s private school tuition, Blount County filed the lead civil action against Bowens challenging the hearing officer's finding.  Case No.:  2:11-cv-3539-AKK, doc. 1.  Subsequently, J.B., through his mother Bowens, filed the member civil action against Blount County Superintendent James E. Carr seeking attorney's fees and costs as the prevailing party of the administrative proceeding and sanctions for "unreasonably protracting the final resolution of the controversy," and a motion to consolidate the actions.  Case No.:  2:11-cv-3555-WMA, docs 1 and 4.  The court granted the motion to consolidate, doc. 9,[1] and now has for its consideration cross motions for summary judgment, docs. 13, 34, 24 and 36.  The motions are fully briefed and ripe for resolution.  Docs. 27, 28, 46, 51.  For the reasons stated below, the court **GRANTS** Bowens' motion and **DENIES** Blount County's and Carr's motions.

## I.  STANDARD OF REVIEW

The parties filed motions under Rule 56(a) of the Federal Rules of Civil Procedure, which states that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[1]The court will refer to the document numbers in the lead case, 2:11-cv-3539-AKK.

judgment as a matter of law." This general principle is inapplicable here because "summary judgment [in IDEA cases] has been deemed appropriate even when facts are in dispute, and is based on a preponderance of the evidence. That is why the district court's decision 'is perhaps better described as judgment on the record.'" *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2009) (citations omitted). To that end, the IDEA requires the district court to conduct a *de novo* review of the hearing officer's findings. *Bd. of Ed. v. Rowley*, 458 U.S. 176, 206 (1982). In doing so, the court must give "due weight" to the administrative hearing officer's determination: "The fact that § 1415[ ] requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Id.* at 206-207.[2] As such, "administrative factfindings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." *Loren F.*, 349 F.3d at 1314 n.5 (citations and

---

[2]*See also* 20 U.S.C. § 1415(i)(2)C):
"In any action brought under this paragraph, the court--

(i) shall receive the records of the administrative proceedings;

(ii) shall hear additional evidence at the request of a party; and

(iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

quotation marks omitted).  Therefore,

> a court's inquiry in suits brought under § 1415 [ ] is two fold.  First, has the State complied with the procedures set forth in the Act?  And second, is the individualized education program ["IEP"] developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?  If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

*Rowley*, 458 U.S. at 206-207.  "A 'no' answer means no FAPE was provided [ ],

thus enabling the student to resort to private school and seek reimbursement from

the school district under 20 U.S.C. § 1412(a)(10)(C)(ii)."  *Loren F.*, 349 F.3d at

1312.

## II.  FACTS

*A.*     *Bowens' initial meetings with Blount County officials*

Bowens and her autistic son J.B. resided in Blount County, Alabama at all

times relevant to this lawsuit.  Docs. 25-4 at 12, 15.  Prior to his third birthday,

J.B.'s autism caused him to exhibit "moderate-severe mixed receptive and

expressive language disorder," "delayed motor skills," "difficulty understanding

directions," "repetitious behaviors," and delays in social and communicative

development.  Docs. 25-4 at 12, 15; 25-48 at 8.  As a result, J.B.'s pediatrician

referred him to Susan Betke, the Early Intervention Coordinator at The Arc, for

intervention services.[3]  Doc. 25-48 at 8.  Betke arranged for J.B. to receive speech

and occupational therapy and an evaluation at the University of Alabama at

Birmingham's Sparks Clinic.  Doc. 25-48 at 8.  Bowens returned to the Sparks

Clinic in late April to meet with the practitioners to discuss J.B.'s autism

diagnosis.  Doc. 25-4 at 13.  The Sparks Clinic's report stated, in relevant part:

> [T]he family should begin to have some conversation with early
> intervention regarding transition planning. [J.B.] will be eligible for
> comprehensive special education services once he turns three year[s]
> old.  The goal is to have [J.B.'s IEP] in place so services with the
> school system may begin on his third birthday.
> * * * *
> [J.B.] needs an intensified approach to treatment. Young children
> with Autistic Disorder appear to benefit significantly from 25 hours
> or more per week of intervention, delivered in highly structured
> settings, with very specific teaching goals that address all areas of
> development.
> * * * *
> It is recommended that [J.B.] attend a structured *preschool* on a full-
> time basis.  Exposure to typically developing peers is often helpful in
> facilitating communication and interaction skills as children often
> learn through observation and imitation.

*Id.* at 13, 16, 19 (emphasis added).

In April 2009, before the Sparks Clinic diagnosed J.B. with autism, Betke

also arranged a meeting (known as  Early Intervention to Preschool Transition

---

[3]The Arc is "a powerful voice for all people with [intellectual and developmental
disabilities], working daily to create opportunities for individuals and drive systemic change."
www.arcjc.org/whoweare/.

Planning Meeting) with Bowens and Blount County's speech pathologist Jan

Sullivan to discuss options for J.B.'s education.  Docs. 25-4 at 6; 25-48 at 9; 25-51

at 11, 16, 25-20 at 27; 20 U.S.C § 1412(a)(9); Ala. Admin. Code 290-8-9-

.01(1)(d).  Betke arranged this meeting to comply with the IDEA's mandate that

J.B.'s IEP begin by his third birthday.  20 U.S.C. § 1412 (a)(1)(A); Ala. Admin.

Code, 290-8-9-.01(d).  During the meeting, Bowens described J.B.'s behavior and

explained that she had to withdraw J.B. from First Baptist Church of Pinson's

daycare program because J.B. was not toilet trained.  Docs. 24-19 at 15; 25-48 at

9-10.  Sullivan then informed Bowens of educational options available in her area,

including that J.B. could attend and receive services at the Multi-Needs Center in

Cleveland, Alabama for two or three days per week or attend the kindergarten

program at Locust Fork Baptist Church.  Docs. 25-4 at 5; 25-48 at 9-11; 25-54 at

56.  However, Bowens viewed the suggested placement at Locust Fork as a non-

starter because Locust Fork also has a toilet trained requirement.  Docs. 25-48 at

9-11; 25-54 at 56.  The meeting ended with Bowens and Sullivan agreeing to meet

again in May to review the Sparks Clinic results.  Doc. 25-48 at 12.

 In May 2009, since J.B. was still two years old and Blount County had no

obligation yet to educate him, Bowens enrolled J.B. at Mitchell's Place in

Birmingham, Alabama for the 2009-2010 school year.  Doc. 25-48 at 15-16.

Bowens relayed this fact to Sullivan when the two met in May 2009 for their second meeting. *Id*. Bowens also provided Sullivan a copy of the Sparks Clinic's autism diagnosis, which formed the basis for J.B.'s special education services. *Id*. at 15; doc. 25-5 at 13, 19. Sullivan again offered placement at the Multi-Needs Center for two days per week, which Bowens rejected based on the Sparks Clinic's recommendations that J.B. needs "25 hours or more per week of intervention" and "structured *preschool* on a full-time basis." Docs. 25-4 at 13, 19; 25-48 at 15; 25-51 at 64 (emphasis in original). Sullivan also offered a Head Start placement although Bowens was ineligible because of her income. Doc. 25-48 at 15. However, Sullivan failed to offer Hayden Primary School, which is an "extension of the Multi-Needs Center" and is the "same program, just in a different location," because it was not in Bowens' local area. Docs. 25-51 at 66; 25-48 at 22; 25-3 at 15; *see also* doc. 25-51 at 18. Presumably, Hayden Primary School had the resources to provide J.B. treatment that was consistent with the Sparks Clinic's recommendation. In any event, at Bowens' request, Sullivan agreed to arrange for J.B. to receive speech and occupational therapy at Blount County's Locust Fork Elementary School beginning in January 2010 so that J.B. could get accustomed to the school before enrolling in kindergarten. Docs. 25-48 at 16, 19, 20; 25-5 at 19.

B.      *The October 7, 2009 IEP meeting*

In October 2009, shortly before J.B.'s third birthday, Bowens and Sullivan

met to formulate J.B.'s IEP.[4]  Doc. 25-5 at 13.  The parties completed various

documents memorializing the IEP, which, in relevant part, state:

- That "Blount County School System is accepting all the previous evaluations from Children's Hospital - Sparks Center, etc." and that further evaluations are "not needed."

- Noted J.B.'s autism diagnosis, that J.B. is enrolled at Mitchell's Place where he receives speech and occupational therapy, and that J.B. receives speech and occupational therapy through Blount County.

- The IEP form's least restrictive environment[5] section stated:  "Does this student attend the school (or for a pre-school-age student, participate in the environment) he/she would attend if nondisabled?  Yes."  Importantly, the section labeled "Secondary LRE (only if LRE above is Private School-Parent Placed)" was left blank.

- The Notice of Intent Regarding Special Education Services signed by Sullivan and other Blount County officials stating that (1) the "IEP Team considered a request to initiate or change" J.B.'s "Provision of Free Appropriate Public Education," but the "Placement" box option was unchecked; (2) "[J.B.] will continue to receive Early Intervention Services. He will attend Mitchell's Place in the fall. . . .  The parents have enrolled [J.B.] in Early Intervention Services and at Mitchell's Place;" and (3) the

---

[4]Steve Love and Rebecca Goble signed the IEP form as conference attendees, but later admitted that they did not attend the conference.  Doc. 25-5 at 25.

[5]Least restrictive environment is used to mean that children with disabilities are educated with non-disabled children and "removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  34 C.F.R. § 300.114(a)(2)(i) and (ii); *see also* Ala. Admin. Code 290-8-9-.06(1).

"family considered placing [J.B.] in the Multi-Needs Preschool classroom, but decided to place him at Mitchell's place."

•     The Persons Responsible for IEP Implementation form, signed by Sullivan and J.B.'s Mitchell's Place teacher, stating that the Mitchell's Place "have access to the IEP and have been informed of their *responsibility* in implementing the IEP, and of the specific accommodations, modifications, and support that *must* be provided for [J.B.] for [the] 2009-2010 school year."

Docs. 25-5 at 18, 19, 27, 36, 54; 25-48 at 27 (emphasis added).[6]  According to Sullivan, "[t]he IEP team made the decision to accept that IEP," which was "negotiated [ ] based on what the parents wanted and what the IEP team decided was *appropriate* for the child and was *agreed* upon and finalized."  Docs. 25-54 at 29; 25-51 at 68 (emphasis added).  Although J.B.'s IEP form states that Bowens considered the Multi-Needs Center but decided to place J.B. at Mitchell's Place, Sullivan testified that Bowens requested only speech and occupational consultation services and "had no interest in the preschool programs in Blount County.  [Bowens] had already made the decision about Mitchell's Place."  Docs. 25-54 at 56; 25-5 at 27.

---

[6]Although there were other meetings with J.B.'s parents and Blount County officials prior to the October 2009 IEP meeting, the court addresses only the meetings relevant to its determination of the issues.

C.    *Bowens' requests for J.B.'s Mitchell's Place tuition reimbursement and a due process hearing and the hearing officer's decision*

Consistent with the IEP, J.B. attended Mitchell's Place for the 2009-2010 school year.  In May 2010, during an IEP meeting at Blount County, Bowens requested for the first time that Blount County pay J.B.'s 2009-2010 Mitchell's Place tuition.  Doc. 25-48 at 55.  Bowens subsequently made the request in writing on July 27, 2010.  Doc. 25-7 at 11.  After Blount County rejected the requests, doc. 25-53 at 15, Bowens asked for a due process hearing with the Alabama State Department of Education in which she alleged that Blount County failed to offer J.B. a FAPE and requested tuition reimbursement.  Doc. 25-18 at 5. Ultimately, the hearing officer found in Bowens' favor:

> The State Department of Education regulations require that a school make a [FAPE] available to a disabled child no later than the child's third birthday.  Ala. Admin. Code, 290-8-9-.01(d). [Sullivan] insisted that the October 7, 2009 IEP was 'negotiated.'  That assessment is stretching the events that actually occurred at the meeting.  According to the parents, the offer of services was fundamentally a 'take or leave it' proposition.  In that regard, the services offered by the school system for the 2009-2010 school year were not designed to provide a [FAPE].
>
>     It was the position of the special education director for the school system that once the parents elected to enroll the child in the Mitchell's Place the school system was not obligated to provide services to a child enrolled in an out-of-county placement.  However, it is the finding of the Hearing Officer that the local education representative of the school system acquiesced and approved the parent's placement of their son in Mitchell's Place.  She sought and

obtained the acknowledgment of Mitchell's Place that it was responsible for implementation of Petitioner's 2009-2010 IEP.  In her role as [the local educational agency representative ("LEA"), Sullivan] committed the agency resources to ensure that adequate services would be provided to the child at Mitchell's Place via implementation of the IEP.  Ala. Admin. Code, 290-8-9-.05(3)(d)4.  The fact that reimbursement was not discussed at that time does not warrant a different conclusion.  A parent of a disabled child should not be led to believe that the school system approves a placement of a child and then, when the parent learns they are entitled under the law to reimbursement for that placement, have the school system decline to provide such reimbursement.

* * * *

The procedural violations of the school system involving the lack of a notice of intent regarding reimbursement, the absence of an appropriate LEA and general education teacher at the October 2009 IEP meeting and the contention that the speech pathologist [Sullivan] who participated in the IEP meeting was not actually a LEA do not warrant relief other than as specified [ ] below.

* * * *

The parents are entitled to reimbursement for the enrollment of the child at Mitchell's Place beginning October 7, 2009 and for the remainder of the academic 2009-2010 school year.  Further, because it was clear from the evidence that Petitioner needed extended school year services yet the local education agency did not respond to that need the parents are also entitled to reimbursement for June 2010 and July 2010.  The school system shall reimburse the parents Mitchell's Place tuition for the months of October 2009 though July 2010 as well as mileage at [the] regularly mandated rate for the local education agency. [ ].  The parents shall be required to provide documentation of both tuition and other fees at Mitchell's Place as well as the miles traveled.  The local education agency is entitled to an offset for any sums paid to Mitchell's Place as a consequence of parents' insurance.

Doc. 25-3 at 49-50, 51-52.[7]  It is this decision that Blount County challenges and for which J.B., through Bowens, seeks attorney's fees as the prevailing party and sanctions.

## III.  ANALYSIS

*A.    IDEA*

The IDEA "ensure[s] that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); *Rowley*, 458 U.S. at 176.  A FAPE is special education services that:

> (A) have been provided at public expense, under public supervision and direction, and without charge;
>
> (B) meet the standards of the State educational agency;
>
> (C) include an appropriate preschool [ ] education in the State involved; and
>
> (D) are provided in conformity with the individualized education program required under section 1414(d).

20 C.F.R. § 1404(9).  "Related services" include "such developmental, corrective, and other supportive services (including speech-language pathology [and] psychological services . . .) as may be required to assist a child with a disability to

---

[7]Bowens also requested tuition reimbursement for J.B.'s 2010-2011 school year at Mitchell's Place.  Doc. 25-3 at 1.  The hearing officer declined that request and Bowens did not appeal that issue.

benefit from special education." 20 U.S.C. §§ 1401(26)(A) and 1404(9).

There are several basic steps involved in creating a FAPE. First, the school board must formulate an IEP annually "during a meeting between the student's parents and school officials." 20 U.S.C. §§ 1414(d)(1)(A)-(B) and (d)(2)(A). This meeting "protect[s] the informed involvement of parents in the development of an education for their child." *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007). Basically, the IEP outlines the child's current educational performance, establishes annual objectives to improve the performance, and describes the instruction and related services needed to enable the child to meet those objectives. 20 U.S.C. § 1414(d). Critically, "[t]he Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible." *See Sch. Comm. of Town of Burlington v. Dept. of Educ.*, 471 U.S. 359, 369 (1985) (citations omitted). In other words, "[t]o the maximum extent appropriate," a disabled child's educational placement must conform with the child's least restrictive environment ("LRE"). 20 U.S.C. § 1412(a)(5). The regulations require a child's LRE to be, among other things, (1) based on the child's IEP, (2) as close as possible to the child's home,

(3) in the school where the child would be educated if non-disabled, unless the IEP

requires some other arrangement, and (4) in age appropriate regular classrooms.

Ala. Admin. Code 290-8-9-.06(1).

Next, once an IEP is formulated, the school must determine whether to

provide the child's special educational needs. *See Burlington*, 471 U.S. at 369. If

the school decides not to provide the services described in the IEP, or decides that

it cannot provide a FAPE, the school must refer the child to private placement at

public expense. *See* 20 U.S.C. § 1412(a)(10)(B)(i). Conversely, if the school opts

to provide the services, the parents can (1) enroll their child and the school must

provide the services described in the IEP, (2) agree that the IEP provides FAPE

but voluntarily enroll their child in a private program at the parents' expense, or

(3) reject the IEP and challenge it through a due process hearing. *See* 20 U.S.C.

§§ 1412(a)(6)(A), (a)(10)(B) and (C).[8]  Relevant to this lawsuit,

---

[8]20 U.S.C. § 1412(a)(10)(C)(iii) provides, in relevant part, that
"Payment for education of children enrolled in private schools without consent of or referral by
the public agency
      (i) In general
Subject to subparagraph (A), this subchapter does not require a local educational agency to pay
for the cost of education, including special education and related services, of a child with a
disability at a private school or facility if that agency made a free appropriate public education
available to the child and the parents elected to place the child in such private school or facility.
      (ii) Reimbursement for private school placement
If the parents of a child with a disability, who previously received special education and related
services under the authority of a public agency, enroll the child in a private elementary school or
secondary school without the consent of or referral by the public agency, a court or a hearing

> the IDEA authorizes reimbursement for the cost of private special-
> education services when a school district fails to provide a FAPE and
> the private-school placement is appropriate, regardless of whether the
> child previously received special education or related services
> through the public school.
>
> When a court or hearing officer concludes that a school district failed
> to provide a FAPE and the private placement was suitable, it must
> consider all relevant factors, including the notice provided by the
> parents and the school district's opportunities for evaluating the child,
> in determining whether reimbursement for some or all of the cost of
> the child's private education is warranted.

*Forest Grove*, 557 U.S. at 247; 20 U.S.C. §§ 1412 (a)(10)(C) & 1415(i)(2)(C)(iii).

With this framework in mind, the court now addresses the parties'

respective contentions, beginning first with whether Blount County offered J.B. a

FAPE, then whether J.B.'s placement at Mitchell's Place was appropriate, and,

finally, whether equity considerations favor a finding that reimbursement of J.B.'s

---

officer may require the agency to reimburse the parents for the cost of that enrollment if the court
or hearing officer finds that the agency had not made a free appropriate public education
available to the child in a timely manner prior to that enrollment.
      (iii) Limitation on reimbursement
      The cost of reimbursement described in clause (ii) may be reduced or denied--
            (I) if--
            (aa) at the most recent IEP meeting that the parents attended prior to removal of
            the child from the public school, the parents did not inform the IEP Team that
            they were rejecting the placement proposed by the public agency to provide a free
            appropriate public education to their child, including stating their concerns and
            their intent to enroll their child in a private school at public expense; or
            (bb) 10 business days (including any holidays that occur on a business day) prior
            to the removal of the child from the public school, the parents did not give written
            notice to the public agency of the information described in item (aa)."

tuition is warranted.

B.    *Blount County failed to provide J.B. a FAPE*

The critical inquiry here is confined to the October 2009 IEP the parties

executed just prior to J.B.'s third birthday.  20 U.S.C. § 1412 (a)(1)(A); Ala.

Admin. Code, 290-8-9-.01(d).  The IEP reflects that Bowens rejected Blount

County's offer to place J.B. at the Multi-Needs Center.  Docs. 25-48 at 23; 25-52

at 64.  Therefore, to obtain reimbursement of J.B.'s 2009-2010 Mitchell's Place

tuition, Bowens must first show that the proposed placement at the Multi-Needs

Center was inappropriate.  *Forest Grove*, 557 U.S. at 246, (citing *Florence Cnty.*

*Sch. Dist. #4 v. Carter*, 510 U.S. 7, 15 (1993).

To make this showing, consistent with the hearing officer's finding, Bowens

contends that Blount County failed to offer J.B. a FAPE because two to three days

placement at the Multi-Needs Center failed to sufficiently meet J.B.'s needs for

the fundamental reason that it is inconsistent with the Sparks Clinic's assessment

and recommendation.  Docs. 13-1 at 14; 25-48 at 23.  Based on the court's *de novo*

review, the court finds that the record supports the hearing officer's finding.  As a

threshold matter, the evidence is undisputed that Blount County accepted the

Sparks Clinic's evaluation.  Doc. 25-5 at 36.  Consequently, Blount County had an

obligation to provide a FAPE consistent with the Sparks Clinic's determination

that J.B. required a minimum of twenty-five hours of intensive instruction per week and that J.B. "attend a structured preschool on a full-time basis."  Docs. 25-4 at 19; 24-4 at 13, 16.  Therefore, Blount County's offer for J.B. to attend the Multi-Needs Center for two to three days per week fell significantly short of satisfying J.B.'s "unique needs," as outlined by the Sparks Clinic.  20 U.S.C. § 1400(d)(1)(A); *see also Rowley*, 458 U.S. at 176.  Based on these facts, the hearing officer's finding that the Multi-Needs Center placement offer failed to meet the Sparks Clinic's determination of J.B.'s required services is prima facie correct.  *See Loren F.*, 349 F.3d at 1314 n.5.

Blount County's contention that genuine issues of fact exist regarding whether the Multi-Needs Center placement adequately met J.B.'s needs misses the mark.  In fact, the court is confounded by this contention given that Blount County acknowledged that the Multi-Needs Center was an inappropriate placement when it agreed in the IEP meeting to J.B.'s Mitchell's Place placement.  Docs. 25-54 at 29; 25-51 at 68.  Moreover, even ignoring this fact, the purported factual dispute rests on an erroneous reading of the testimony of Blount County's expert Becky Brothers.  Specifically, Blount County alleges that Brothers, its Special Education Coordinator, testified that two to three days at the Multi-Needs Center appropriately met J.B.'s needs.  Docs. 27 at 15; 25-50 at 43; 25-53 at 12.

However, Blount County overlooks conveniently that Brothers' based her

contention on the absence of an autism diagnosis:

> Q:    [B]ased on your expertise and looking at [the Early Intervention to
>       Preschool Transition Planning Meeting Documentation], would two
>       days a week at the Multi-Needs Center, would that be an appropriate
>       location and appropriate amount of time and resources available to
>       serve this child as his needs are documented on [the Early
>       Intervention to Preschool Transition Planning Meeting
>       Documentation]?
>
> A:    Yes, they would.
>
> Q:    Because at this point in time, *there is not an Autism diagnosis* that the
>       school district knows about; correct?
>
> A:    *Correct*.

Doc. 25-50 at 43 (emphasis added).  While Brothers' assessment may be correct

with respect to the initial meeting that occurred in April 2009, unfortunately for

Blount County, the May 2009 autism diagnosis J.B. received, well prior to the

October 2009 meeting to develop J.B.'s IEP, undermines Brothers' testimony.

Again, the Sparks Clinic diagnosed J.B. with autism and recommended an

"intensified approach to treatment" and "25 hours or more per week of

intervention, delivered in highly structured settings."  Doc. 25-4 at 13.  It is this

diagnosis that established J.B.'s eligibility for special education services and

provided the basis for Blount County's obligation to develop J.B.'s IEP.

Consequently, because Brothers' testimony is premised on the absence of an autism diagnosis, her testimony is insufficient to disturb the preponderance of evidence that establishes that the Multi-Needs Center placement failed to provide J.B. a FAPE. *Loren F.*, 349 F.3d at 1313.

Based on the record before this court, Blount County failed to establish that the hearing officer's determination is not entitled to "due weight." *See Rowley*, 458 U.S. at 206. The court agrees with the hearing officer and finds as a matter of law that Blount County's offer for J.B. to attend the Multi-Needs Center for two to three days per week was inconsistent with the Sparks Clinic's evaluation and recommendations, and that Blount County failed to provide J.B. a FAPE.

C.    *Mitchell's Place was appropriate and provided J.B. a FAPE*

The court turns next to Blount County's contention that Bowens' "unilateral placement of her child in a private program outside of her child's neighborhood and community when such a program is not required violates the IDEA's [least restrictive environment] mandate." Doc. 34-1 at 16.[9] Basically, Blount County

---

[9]34 C.F.R. § 300.116 provides, in relevant part:
"(b) The child's placement –
  (1) is determined at least annually;
  (2) is based on the child's IEP; and
  (3) is as close as possible to the child's home;
(c) Unless the IEP of a child with a disability requires some other arrangement, the child is educated in the school that he or she would attend if non-disabled;
(d) In selecting the LRE, consideration is given to any potential harmful effect on the child or on

maintains that Bowens released it from its IDEA obligations by unilaterally

enrolling J.B. at Mitchell's Place.  This argument is unavailing, in part, because

although Bowens enrolled J.B. at Mitchell's Place before the October 2009 IEP

conference, Blount County never objected and, in fact, acquiesced to the

placement.  *See Burlington*, 471 U.S. at 372 (unilateral placement found where

parents rejected the proposed IEP, withdrew their son from his public placement,

and placed him at a private school); *Carter*, 510 U.S. at 13 (unilateral placement

where "the private placement has necessarily been made over the schools

districts's objection).  Moreover, Bowens' decision to place J.B. at Mitchell's

Place, even if unilaterally made, does not absolve Blount County from its IDEA

obligations.  Rather, the regulations state unequivocally that Blount County's

responsibility for providing J.B. a FAPE only ceases "*if* appropriate services are

available in the local education agency of residence."  Ala. Admin. Code, 290-8-9-

.10(b) (emphasis added).  Where, as here,  Blount County failed to offer J.B.

appropriate services, it remained responsible for providing J.B. a FAPE despite the

family's decision to place J.B. at a private facility.

Based on this record, the court finds no basis to disturb the hearing officer's

decision.  As the hearing officer found, the Mitchell's Place placement was

---

the quality of services that he or she needs."

consistent with the LRE mandate and the Sparks Clinic's evaluation and recommendations.  Indeed, the IEP Blount County developed specified the Mitchell's Place placement as J.B.'s LRE because it is a "school that he would attend if not nondisabled."  Doc. 25-5 at 18.  This IEP, which Blount County "negotiated" and "what the IEP team decided was appropriate . . . and was agreed upon," established unequivocally that Blount County agreed that Mitchell's Place was J.B.'s LRE.  The decision by Blount County to accept the Mitchell's Place placement was appropriate and not surprising because, consistent with the Sparks Clinic's recommendation, the placement allowed J. B. to attend school five days per week, have "exposure to typically developing peers" to facilitate J.B.'s "communication and interaction skills," and, rather than the Multi-Needs Center's class 6:2 ratio of disabled to typical students, J.B.'s class had "seven typically developing children" and "[five] children on the autism spectrum." Docs. 25-3 at 28; 25-8 at 13, 17-36; 25-4 at 19.  Furthermore, J.B.'s Mitchell's Place IEP team formulated a comprehensive IEP that included communication, social/emotional (play), social/emotional (social behavior and play), verbal behavior/Applied Behavior Analysis, motor, adaptive, language and literacy, and oral motor evaluations and benchmark goals.  Doc. 25-8 at 17-36.  Finally, in light of Blount County's failure to offer any viable options close to Bowens' home, the distance

between Bowens' home and Mitchell's Place did not violate the IDEA's requirement that J.B. receive services as close to his home as possible.

In short, based on the evidence before this court, no credible basis exists for Blount County to challenge the hearing officer's findings regarding the Mitchell's Place placement.  Accordingly, the court finds that the hearing officer's findings are supported by a preponderance of the evidence and, as such, accords them due weight.

D.   *Equitable Factors*

In light of the determination that Blount County failed to offer J.B. a FAPE and that Mitchell's Place was an appropriate placement, the court now addresses the equitable considerations it must evaluate in determining if reimbursement is warranted.  The IDEA provides aggrieved parties the right to bring a civil action and authorizes the court to grant relief "as the court determines appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), including reimbursement, which is "a matter of equitable relief, committed to the sound discretion of the district court," *Loren F.*, 349 F.3d at 1314 (citations omitted).  The court's authority includes "the power to order school authorities to reimburse parents for their expenditures on private special-education services if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *Burlington*, 471 U.S. at 369;

*see also Carter*, 510 U.S. at 7.  "When a court [ ] concludes that a school district failed to provide a FAPE and the private placement was suitable, it must consider all relevant factors, including the notice provided by the parents and the school district's opportunities for evaluating the child, in determining whether reimbursement for some or all of the cost of the child's private education is warranted." *Forest Grove*, 557 U.S. at 247.  Moreover, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant." *Id.* at 232 (internal citations omitted); *see Burlington*, 471 U.S. at 370.  Finally, "Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case. . . . Reimbursement merely requires the [school district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington*, 471 U.S. at 370-371.[10]

Blount County contends that it is not obligated to reimburse Bowens because she (1) failed to provide timely notice of the intent to seek reimbursement, (2) refused to visit Blount County's programs or talk to its teachers, and (3) is estopped from claiming reimbursement because she purportedly only requested

------

[10]"In considering the equities, courts should generally presume that public-school officials are properly performing their obligations under IDEA." *Forest Grove*, 557 U.S. at 247.  Based on the procedural violations and credibility issues cited by the hearing officer, doc. 25-3 at 31, 38, the court declines to presume that Blount County properly performed its obligations under the IDEA.

consultative services.  Docs. 27 at 20-25, 34-1 at 17-27.  The court addresses each

contention in turn.

1.     Alleged delay in providing notice of intent to seek reimbursement

Blount County's timeliness contention is premised on several grounds.

First, Blount County essentially asserts a waiver argument by maintaining that

Bowens failed "to notify the local school district of [her] intent to enroll [J.B.]

unilaterally in a private school placement and seek tuition reimbursement from the

school district" and to give the district an opportunity to address her concerns.

Docs. 27 at 20; 34-1 at 17, 19.  Unfortunately for Blount County, the evidence

belies its claim that Bowens unilaterally placed J.B. at Mitchell's Place.  *Id.*

Rather, based on the record before this court, Blount County accepted the Sparks

Clinic's evaluation of J.B.'s specific needs and services, failed to offer J.B. a

FAPE, knew about Bowens' dissatisfaction with the Multi-Needs Center and prior

placement of J.B. at Mitchell's Place, and consented to the Mitchell's Place

placement for the 2009-2010 school year.  Docs. 25-54 at 29; 25-51 at 68.

Therefore, Blount County's waiver argument is unavailing.

Second, relying on *A.H. v. New York City Dep't of Educ.*, 652 F. Supp. 2d

297 (E.D.N.Y. 2009), Blount County contends that Bowens' failure to provide

notice at the October 2009 IEP meeting that she intended to seek reimbursement

constitutes undue delay and a waiver of her right to seek reimbursement. Docs. 27 at 16; 34-1 at 24. The reliance on *A.H.* misses the mark since the facts are distinguishable from the matter before this court. Specifically, in *A.H.* the court denied the plaintiff's request for private school reimbursement because the plaintiff unilaterally placed her child in private school before completing the IEP process and prior to the school board's offer of a FAPE, which "demonstrated that [the plaintiff] did not seriously intend to enroll [her child] in public school." *A.H.*, 652 at 313. In contrast, here, Bowens enrolled J.B. at Mitchell's Place at age two prior to Blount County having any obligation to provide J.B. a FAPE. Thereafter, Bowens contacted Blount County when J.B. turned three to request the FAPE, which establishes that Bowens expected Blount County to provide an education for her son as the law requires. Critically, unlike in *A.H.*, Blount County failed to offer J.B. a FAPE. Moreover, Sullivan's testimony that Blount County "negotiated [the IEP] based on what the parents wanted and what the IEP team decided was appropriate for the child and was *agreed* upon and finalized" demonstrates, as the hearing officer correctly determined, that Blount County "acquiesced and approved the parent's placement of their son in Mitchell's Place." Docs. 25-3 at 49-50; 25-54 at 29; 25-51 at 68 (emphasis added); *see Carter*, 510 U.S. at 12 (the promise of a FAPE is "met by an IEP's provision for education in

the regular public schools or in private schools chosen *jointly* by school officials and parents."). Therefore, the court rejects Blount County's contention that Bowens failed to provide timely notice.

Third, Blount County asserts that it "would have offered the additional services allegedly sought by Bowens" had it known that Bowens intended to seek reimbursement. Docs. 27 at 22; 34-1. In other words, Bowens' purported failure to timely notify Blount County of her intent to seek reimbursement placed Blount County at a disadvantage since it did not have the opportunity to devise alternatives for J.B. Under this logic, a school can wait to see if a parent will pursue a private placement without requesting reimbursement and then only fully comply and provide a FAPE if the parent requests reimbursement for the private placement or insists that the school meets its legal obligation fully. The court declines to sanction such a practice which the court finds would make a mockery of the IDEA. The court rejects this contention also because it is contrary to the evidence, which shows that Bowens sought services from Blount County for J.B. in line with the Sparks Clinic's recommendations. Given that Blount County accepted these recommendations, it follows that Blount County had an obligation to provide J.B. a FAPE consistent with the recommendations during the October 2009 IEP meeting. Blount County simply cannot offer an inadequate option and

then wash its hands of its obligations, especially since Bowens informed it of the inadequacy of the offered placement and Blount County's representative Sullivan agreed with this assessment by signing off on J.B.'s placement at Mitchell's Place. In doing so, Sullivan bound Blount County to provide J.B.'s private placement at public expense.  Doc. 25-54 at 29; 25-51 at 68.

Finally, the court likewise finds unavailing Blount County's contention that Bowens' request for private placement reimbursement and a due process hearing seven months after the October 2009 IEP meeting constituted an undue delay. Doc. 43-1 at 22.  Blount County failed to present any evidence of bad faith or an actual intent to delay.  In fact, Bowens maintains that she asked for reimbursement as soon as she learned that it may be available to her.  Doc. 25-48 at 55.  Likewise, the need for a due process hearing became evident only after Blount County denied the reimbursement request.  Doc. 25-1. Moreover, Blount County's contention ignores conveniently that it agreed to and committed to the Mitchell's Place placement.  Doc. 25-54 at 29; 25-51 at 68.  As the hearing officer correctly determined,

> [Sullivan] committed agency resources to ensure that adequate services would be provided to the child at Mitchell's Place via implementation of the IEP.  [ ]  The fact that reimbursement was not discussed at that time does not warrant a different conclusion.  A parent of a disabled child should not be led to believe that the school

system approves a placement of the child and then, when the parent
learns they are entitled under the law to reimbursement for that
placement, have the school system decline to provide such placement.

Docs. 25-3 at 50.  In other words, Blount County cannot mandate that Mitchell's

Place deliver the services outlined in J.B.'s IEP and then seek after-the-fact to void

its decision to pass to Mitchell's Place Blount County's responsibility to provide

J.B. a FAPE.  Doc. 25-5 at 51, 54; 25-48 at 27.

Based on the record before this court, Blount County knew of its potential

liability regarding J.B.'s tuition.  As such, Bowens' request for reimbursement

simply required Blount County to belatedly pay the expenses it would have paid

had it provided J.B. a FAPE.  *See Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149,

157 (3d Cir. 1994) (parents expression of concerns regarding child's placement

arguably put the education board "on effective notice of the IEP's inadequacy and

the Board's potential liability to [child's] parents.").

### 2.   Alleged refusal to visit Blount County's program or talk with the teachers

Blount County maintains next that Bowens reached an erroneous conclusion

about available services due to Bowens' failure to visit Blount County's pre-

schools and speak to teachers.  Doc. 34-1 at 21-22.  This failure purportedly

prevented Bowens from discovering that Blount County's preschool program "in

fact provided up to a 5 day a week program" and that the private pre-school day care centers in the county would have waived the toilet trained requirement.  *Id.* In a nutshell, Blount County asks this court to put the onus on Bowens to "learn" information that the IDEA obligated Blount County to provide.  By raising this contention, Blount County actually demonstrates its failure to offer J.B. a FAPE and provides further support for J.B.'s private placement at Mitchell's Place.  As the hearing officer correctly observed, Blount County failed to even offer Hayden Primary School as an option although it offered the same services as the Multi-Needs Center, docs. 25-3 at 15; 25-51 at 66; 25-48 at 22, and, now by its own admission, that it failed to offer five day a week placements that were available. In light of the Sparks Clinic report and recommendations, which Blount County accepted, Blount County's decision to only offer J.B. a two to three-day placement and to claim subsequently that Bowens had the obligation to discover on her own the better options that existed within the Blount County System is confounding to say the least.  To find for Blount County under these facts, the court would have to re-write the IDEA and shift to Bowens the burden of providing a FAPE.  The court declines to adopt such an erroneous reading of the IDEA.

     3.    <u>Estoppel</u>

Finally, Blount County asserts that Bowens is estopped from "complaining

about the October 2009 IEP offered to her son" because Bowens requested that

Blount County provide only consultative services.  Doc. 34-1 at 23.  To support its

contention, Blount County cites Bowens' conversations with Sullivan in May,

June, and August 2009 where Bowens requested that Blount County provide J.B.

speech and occupational therapy.  *Id*.  Unfortunately for Blount County, Bowens

made these requests while J.B. was receiving early intervention services, months

*before* J.B.'s third birthday in October and, therefore, *before* the IDEA obligated

Blount County to provide J.B. a FAPE.  Moreover, when J.B. turned three,

Bowens requested a meeting where she asked Blount County to provide a FAPE.

It defies logic that Bowens would have requested the October 2009 IEP meeting if

she had not intended to request that Blount County provide the full services the

IDEA required.  Furthermore, Bowens earlier requests did not terminate or

suspend Blount County's obligations under the IDEA, which provides

unequivocally that "each local educational agency [ ] *shall* have in effect, for each

child with a disability in the agency's jurisdiction, an [IEP]."  20 U.S.C. §

1414(d)(2) (emphasis added).  Therefore, Bowens is not estopped from pursuing

rights prescribed under the IDEA.

      In sum, construing the IDEA to cut off parental rights to reimbursement

under these facts would defeat the IDEA's principal purpose of providing children

with disabilities a FAPE based on their unique needs.  Therefore, the court finds

that equitable considerations do not warrant denying or reducing Bowens'

reimbursement of J.B.'s Mitchell's Place tuition. Consequently, consistent with

the hearing officer's determination, Bowens is entitled to reimbursement of J.B.'s

Mitchell's Place tuition from October 2009 through July 2010, and mileage at the

local educational agency's mandated rate.  20 U.S.C. § 1401(26)(A) ("The term

'related services' means transportation."); doc. 25-3 at 51-52.

E.     *J.B. v. Superintendent Carr*

    1.    Carr's motion for summary judgment based on procedural grounds

        Construing the Complaint as raising claims against him in his individual

capacity, Superintendent James E. Carr filed a motion for summary judgment

asserting that (1) the Complaint fails to mention him as a party to this lawsuit or

elsewhere in the body of the Complaint, (2) the IDEA does not authorize

attorney's fees against an individual, and (3) he cannot be sued under the IDEA

because he does not receive federal funds.  Doc. 24-1 at 5-8.  To the extent J.B.

raises claims against Carr in his individual capacity, Carr is correct.  However, this

lawsuit is against Carr in his official capacity because the Complaint names the

defendant as "James E. Carr, Superintendent of and for Blount County Board of

Education" and J.B. served Blount County instead of Carr. Docs. 1, 2 and 3.[11]

"Official-capacity suits [ ] generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Ky. v. Graham*, 473 U.S. 159, 166 (1985), (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). Therefore, the court denies Carr's motion as **MOOT**.

2.    Carr's motion for summary judgment on substantive grounds

Carr incorporates by reference Blount County's contention that Bowens was not the prevailing party in the due process proceeding and argues, alternatively, that the court should reduce Bowens' attorneys fees, if any, because she prevailed on only one of her three claims. Consistent with the court's decision regarding Blount County's contentions, the court **DENIES** Carr's motion as it relates to J.B.'s status as the prevailing party. Regarding Carr's contention that a reduction of J.B.'s attorneys fees and costs is warranted, the court will enter a briefing

---

[11]The court declines to consider Carr's contention that J.B.'s Complaint claiming attorneys fees as the prevailing party in the due process hearing under the IDEA is redundant because J.B.'s answer to Blount County's Complaint also requested attorneys fees. Doc. 35 at 4. Carr waived this argument because he asserted it for the first time in his reply and failed to assert it in a motion to dismiss or his initial summary judgment briefing. *Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), *cert. denied*, 514 U.S. 1111 (1995).

schedule and allow Carr and Blount County to respond to J.B.'s motion for attorneys fees.

## IV.  CONCLUSION

The court **GRANTS** Bowens' motion for summary judgment, and **DENIES** Blount County's and Carr's motions.  Blount County has not had an opportunity to fully address the attorneys fee issue.  Therefore, in the interest of judicial economy, Bowens and J.B. are **ORDERED** to jointly submit their motion for attorneys fees by March 15, 2013.  Blount County's and Carr's joint response is due by March 29, 2013, and the joint reply, if any, is due by April 5, 2013.   This case is **DISMISSED** with prejudice.

Done the 28th day of February, 2013.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE